UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 06-237-KSF

LEO SAMAD                                                                                    PLAINTIFF

v.                                          **OPINION & ORDER**

GOODMAN DISTRIBUTION, INC.                                              DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court upon the motion of the defendant, Goodman Distribution, Inc. ("Goodman"), for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. [DE # 19]  Having been fully briefed, this matter is ripe for review.

The plaintiff, Leo Samad, has filed this civil action alleging that his former employer, Goodman, terminated his employment in violation of the Age Discrimination in Employment Act (ADEA"), 29 U.S.C. § 621 *et seq*, the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*., and state law.  The Court, having reviewed the parties' briefs and the relevant statutes and case law, finds that Goodman's motion for summary judgment with respect to Samad's federal claims is well taken and should be granted.  The Court will decline to exercise supplemental jurisdiction over Samad's state law claims.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Goodman is a group of company-owned wholesale distribution stores that sell heating and air conditioning products to contractors, institutions, co-distributors, and national accounts.  In the fall of 2003, Goodman hired the plaintiff, Leo Samad, to be the Territorial Sales Manager ("TSM") for the Lexington, Kentucky market.  At the time he was hired, Samad was 57 years old.

Samad was supervised by Louis Hinkle, the Regional Zone Manager for Samad's territory. As part of his duties, Hinkle was charged with supervising Samad and ensuring that the TSMs were meeting certain sales objectives. David Spitz, the Regional Manager for Goodman, was Hinkle's direct supervisor. Vern Foreman, Goodman's branch manager in Lexington, was responsible for providing customer service support when Samad was on the road making sales calls.

Samad contends that during his employment, neither Spitz nor Hinkle ever expressed any concern over Samad's performance or indicated that there were any customer complaints about him. Nor did his customers directly complain to him about his performance. Samad claims that he was never issued any written discipline.

However, Samad was terminated on June 30, 2005, partially as a result of an alleged misunderstanding that occurred on June 27, 2005. That morning, Hinkle called Samad and arranged to attend sales calls with him that day. Samad agreed to meet Hinkle in the Lexington office at approximately 10:30 after he completed a sales call at Shaw's Heating and Air Conditioning ("Shaw's") in Mt. Sterling, Kentucky. Shaw's is a family-owned business owned by Tim and Connie Shaw.

Samad contends that he met with Tim Shaw for about 20 minutes, and that Connie Shaw was not present for the meeting. At the conclusion of this meeting, Samad claims he called upon Redix Heating and Air, directly across the street - a meeting that also lasted about 20 minutes.

After waiting some time for Samad to return to the Lexington office, Hinkle requested that Foreman call Shaw's and ask when Samad left the Mt. Sterling business in order to determine when he would arrive at Goodman's Lexington office. Connie Shaw informed Foreman that she had not seen Samad that day, and that no meeting was scheduled. When Samad eventually arrived in the Lexington office, Hinkle and Samad proceeded together on sales calls. Samad alleges that they

visited a nearby Lexington office that was unhappy because Hinkle, who preceded Samad as TSM

for Lexington, had made some promises to the account which he did not keep.  Samad assumed this

was the reason for Hinkle's presence on sales calls that day.

However, Hinkle later reported to Spitz that Samad had lied about his meeting with Shaw's.

Hinkle recommended that Samad be terminated based on the alleged lie, alleged customer

complaints, and an alleged lack of progress on new business accounts.  Spitz consulted with Kevin

Aden, Goodman's Human Resource director.  Aden agreed that the decision to terminate Samad was

supportable and advisable.

On June 30, 2005, Hinkle asked Samad to meet with him at the end of the day and informed

him that he was terminated.  Samad was eventually replaced in October 2005 by Jack Sexton, whose

date of birth is July 14, 1951.  At the time of his hire, Sexton was 54 years old.

Samad filed this civil action on July 26, 2006.  Samad's complaint asserts claims for (1) age

discrimination in violation of the ADEA and KRS 344.040; (2) interference with ERISA benefits,

in violation of 29 U.S.C. § 1140; and (3) promissory estoppel.  Goodman has requested summary

judgment on each of these claims.

## II.    ANALYSIS

### A.    SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that

one party must prevail as a matter of law.' " *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993)

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  The evidence, all facts, and

any inferences that may permissibly be drawn from the facts must be viewed in the light most

favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.

574, 587 (1986).

　　　　Once the moving party shows that there is an absence of evidence to support the nonmoving

party's case, the nonmoving party must present "significant probative evidence" to demonstrate that

"there is [more than] some metaphysical doubt as to the material facts." *Moore v. Phillip Morris*

*Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).  Conclusory allegations are not enough to allow

a nonmoving party to withstand a motion for summary judgment.  *Id.* at 343.  "The mere existence

of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there

must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. at 252.  "If the evidence is merely colorable, or is not significantly

probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

## B.　　SAMAD'S ADEA CLAIM

　　　　Samad asserts a claim of age discrimination under the ADEA The ADEA prohibits an

employer from discharging older employees on the basis of their age.  29 U.S.C. § 623(a).  To

establish a claim under the ADEA, an employee may offer either direct or circumstantial evidence

of age discrimination. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003).  In

other words, an employment discrimination plaintiff "may establish a prima facie case of

discrimination either by  presenting direct evidence of intentional discrimination by the defendant

. . . or by showing the existence of facts which create an inference of discrimination [through the

*McDonnell Douglas* framework]." *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1248 (6th

Cir. 1995) (internal citations omitted).  "'Direct evidence and the *McDonnell Douglas* formulations are simply different evidentiary paths by which to resolve the ultimate issue of defendant's discriminatory intent.'" *Id.* (quoting *Terbovitz v. Fiscal Court*, 825 F.2d 111, 114-15 (6th Cir. 1987) (quoting *Blalock v. Metals Trades, Inc.*, 775 F.2d 703, 707 (6th Cir. 1985)).  In the employment discrimination context, a plaintiff may present credible direct evidence of discrimination and get the case to the jury regardless of whether plaintiff proves the elements of a prima facie case under the *McDonnell Douglas* formulation.  *Id.*

### 1.    Direct Evidence

In this case, Samad has offered no direct evidence of age discrimination.  He has not pointed to any policy or statement by his employer which suggests that Goodman discriminated against him because of his age.  Without such direct evidence, the Court must employ the burden-shifting principles set forth in *McDonnell Douglas/Burdine* framework.

### 2.    Circumstantial Evidence

Although the Court finds that Samad has not presented any direct evidence of age discrimination, he may establish a *prima facie* case of discrimination "by showing the existence of circumstantial evidence which creates an inference of discrimination."  *Talley*, 61 F.3d at 1246. Under the familiar *McDonnell Douglas/Burdine* framework, a plaintiff may establish a prima facie case of age discrimination by showing that (1) he was at least 40 years old at the time of the alleged discrimination; (2) he was subjected to an adverse employment decision; (3) he was otherwise qualified for the position; and (4) after he was fired, a substantially younger applicant was selected. *See Burzynski v. Cohen*, 264 F.3d 611, 622 (6th Cir. 2001) (citing *Barnett v. Dep't of Veterans Affairs*, 153 F.3d 338, 341 (6th Cir. 1998)).

To create a *prima facie* case, the plaintiff must show "evidence adequate to create an

inference that an employment decision was based on a[n] [illegal] discriminatory criterion . . . ." *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313 (1996).  Specifically, this inference cannot be drawn from the replacement of one worker with another worker insignificantly younger.  *Id.*

The defendants concede that Samad has established the first three elements of a *prima facie* case.  It is the fourth element - whether or not Samad was replaced by a substantially younger employee - that is in dispute.  At the time of his termination, Samad was 59 years old.  He was ultimately replaced by James Sexton, who was 54 years old.  As both Samad and Sexton are over 40 years of age, both are members of the protected class.  In *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336-40 (6ᵗʰ Cir. 2003), the Sixth Circuit examined the law from within the Circuit and also from other Circuits surrounding the question of when an age difference between two members of the protected class becomes significant enough to satisfy the final element of the *McDonnell Douglas/Burdine prima facie* case.  There, the Sixth Circuit established a bright line rule, holding that "in the absence of direct evidence that the employer considered age to be significant, an age difference of six years or less between an employee and a replacement is not significant."  *Id.* at 340.

Here, Sexton is only five years younger than Samad, and Samad has offered no direct evidence that Goodman considered his age to be significant.  Thus, as a matter of law, the Court finds that Samad was not replaced by a significantly younger worker for purposes of the ADEA.

Nevertheless, Samad argues that he can satisfy the fourth prong of his *prima facie* case by identifying a similarly situated individual who received more favorable treatment than Samad.  Specifically, Samad points to Emmett Turner[1], a former employee at Goodman whose date of birth

---

[1]In his brief, Samad refers to the alleged similarly situated individual as Emmett Williams.  Based on Larry Adams declaration [DE 39-2], the individual's name is Emmet Turner.

is November 12, 1957.  Turner was employed by Goodman from August 13, 2002 until March 14, 2003.  Samad alleges that Hinkle discovered Turner in his home during work hours several times before he was terminated, whereas Samad was terminated immediately after Hinkle incorrectly concluded that Samad had lied about his whereabouts.

Turner, however, was not similarly situated to Samad.  In order to show that comparators are similarly situated, the plaintiff "must be similar in all of the relevant aspects" to the comparator. *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994).  The Sixth Circuit has explained this requirement as follows:

> [T]he individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992).   In this case, the evidence reveals that Turner was terminated by Larry Adams, Spitz's predecessor and current head of Goodman's Louisville branch.  Samad, however, was terminated by Spitz, who had not yet joined Goodman at the time of Turner's termination.  Additionally, Samad was terminated based upon the alleged misrepresentation of his whereabouts, coupled with alleged customer complaints and an alleged lack of progress on new business accounts, whereas Samad alleges that Turner was terminated based only on the fact that he was dishonest about his whereabouts.  Because the decision to terminate Turner and Samad was made by different supervisors under different circumstances, they cannot be considered "similarly situated" and thus Samad cannot satisfy the fourth prong of the *prima facie* case.  Accordingly, the Court will grant summary judgment on Samad's ADEA claims.

### B.    SAMAD'S ERISA CLAIM

In addition to his federal claim based on the ADEA, Samad also argues that Goodman

interfered with his attainment of a right under Section 510 of ERISA, of 29 U.S.C. § 1140.  That

section provides:

> It shall be unlawful for any person to discharge, fire, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act, 29 U.S.C. § 301 et seq., or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act.  It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter or the Welfare and Pension Plans Disclosure Act.  In the case of a multiemployer plan, it shall be unlawful for the plan sponsor or any other person to discriminate against any contributing employer for exercising rights under this chapter or for giving information or testifying in any inquiry or proceeding relating to this chapter before Congress.  The provisions of section 1132 of this title shall be applicable in the enforcement of this section.

29 U.S.C. § 1140.  Essentially, Section 510 "offers protection against two types of conduct: adverse

action taken because a participant availed himself of an ERISA right (an 'exercise' or 'retaliation'

violation), and interference with the attainment of a right under ERISA (an 'interference' violation)."

*Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 506 (6th Cir. 2004).  In this case, Samad claims that

Goodman terminated his employment in order to avoid future obligations to pay ERISA benefits -

an interference violation.

   To prove ERISA discrimination, Samad must prove that Goodman had a "specific intent to

violate ERISA."  *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1113 (6th Cir. 2001),

(relying on *Smith v. Ameritech*, 129 F.3d 857, 865 (6th Cir. 1997)).  Samad has presented no direct

evidence that Goodman terminated him in order to interfere with his ability to obtain ERISA

benefits.  Therefore, to avoid summary judgment, Samad must establish a *prima facie* case "by

showing the existence of (1) prohibited employer conduct (2) taken for the purpose of interfering (3)

with the attainment of any right to which the employee may become entitled."  *Smith,* 129 F.3d at

865 (internal quotation marks and citations omitted).  This requires evidence "from which a reasonable jury could find that the defendant's desire to avoid [retirement benefit] liability was a determining factor in plaintiff's discharge."  *Id.* at 865.

Although a plaintiff's burden in establishing a *prima facie* case is not intended to be an onerous one, *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 870 (6th Cir. 2001), Samad must demonstrate more than the fact that he lost the opportunity to accrue new benefits.  *Majewski*, 274 F.3d at 1113.  Rather, a § 510 plaintiff must also establish that his employer "had the specific intent of avoiding ERISA liability when it discharged him.  Otherwise, every employee discharged by a company with an ERISA plan would have a claim under § 510."  *Id.*  Here, Samad has failed to produce any evidence from which a reasonable jury could infer that Goodman terminated his employment in order to avoid having to provide Samad with ERISA benefits.

Samad argues that because he was 59 years old at the time of his termination, the close proximity to his retirement age is sufficient to establish a *prima facie* ERISA case.  However, the cases relied upon by Samad are based on the close proximity between an employee's protected activity and an adverse action.  *See Moon v. Transport Drivers, Inc.*, 836 F.2d 226 (6th Cir. 1987)(holding that the close proximity between any protected activity and an adverse action suggests a causal link); *Smith*, 129 F.3d at 845.  Here, Samad is not claiming that he was terminated because he engaged in any protected activity, such as filing a grievance.  The mere fact of Samad's age and alleged "proximity to retirement" are insufficient to establish a *prima facie* case of interference with a right under ERISA.  Accordingly, summary judgment will be entered in favor of Goodman on Samad's § 510 ERISA claim because no reasonable jury could conclude that Goodman acted with a specific intent to violate ERISA.

C.      SAMAD'S STATE LAW CLAIMS

Samad's remaining claims for age discrimination under KRS 344.040 and 344.050, and his claim for promissory estoppel, are based on Kentucky law.  The supplemental jurisdiction statute, 28 U.S.C. § 1367, explicitly allows a trial court to dismiss pendent state law claims where all federal claims have been dismissed.[2]  Moreover, this Court has engaged in a consideration of "the interests of judicial economy and the avoidance of multiplicity of litigation and [has] balance[d] these interests against needlessly deciding state law issues" and concludes that dismissal of Samad's state law claims is warranted.  *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).  Finally, the Sixth Circuit Court of Appeals has held that as a general matter where the federal claims are dismissed before trial, pendent state claims should be dismissed as well.  *Id.*   Accordingly, Samad's state law claims will be dismissed without prejudice.

III.    CONCLUSION

For the foregoing reasons, the Court, being otherwise fully and sufficiently advised,

**HEREBY ORDERS** that:

(1)    the defendant's motion for summary judgment [DE # 19] is **GRANTED**, and summary judgment on the plaintiff's federal claims will be entered contemporaneously with this Opinion & Order in favor of the defendant;

(2)    the plaintiff's pendant state law claims are **DISMISSED WITHOUT PREJUDICE**;

---

[2]      This section states in part that:

The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if– . . . the district court has dismissed all claims over which it has original jurisdiction . . . .

28 U.S.C. § 1367(c)(3).

(3)     the pretrial conference scheduled for March 13, 2008 and jury trial scheduled for April 15, 2008 are **SET ASIDE**; and

(4)     judgment in favor of the defendant will be entered contemporaneously with this Opinion & Order.

This 18th day of January, 2008.

Signed By:

_**Karl S. Forester**_   $KSF$

**United States Senior Judge**